Our sixth case for argument today is Hernandez-Diaz v. Barr. Mr. Butzinski. Good morning, Your Honors. May it please the Court.  Nexus can be a difficult issue to discern. It requires consideration of… Counsel, if you would raise your voice some, that would help. I apologize. That microphone, it's a big room, and that microphone records more than it amplifies. Thank you. Nexus requires consideration of the motive of the persecutors, and that's something that typically persecutors don't spell out to their victims. To discern this, we're often left to infer it from the context and circumstances of the incidents that occurred. Here, the larger context is that Ms. Hernandez and her husband, Mr. Moran, were national police officers in El Salvador. They testified regarding the deaths of four colleagues on one occasion. For example, two officers responded to a communication regarding a kidnapping or illegal confinement. When they arrived, gang members ambushed them, and they killed both officers. There was no actual emergency. As Mr. Moran explained, this sort of ambush is how gangs operate in El Salvador. They release information about an incident, they wait for officers to arrive, and they attack them. They do this, as Mr. Moran explained, to kill police officers and to intimidate the community. This is what petitioners are afraid of. This sort of a persecution, which would be on account of their membership in particular social groups. They proposed police officers in El Salvador, honest police officers in El Salvador, and former police officers in El Salvador. They also testified regarding incidents involving themselves, three in particular. August 2015, gang members tried to enter their home. Someone was kicking at the wall of their home. Ms. Hernandez and Allison were the only people home at the time. What evidence is it that there were gang members that were kicking at the wall? Certainly a frightening incident, but she didn't see anybody. No gang paraphernalia was left behind, no gang signs. What's the evidence? That is true. She didn't see anyone. She didn't see any gang paraphernalia. This conclusion she came to, the best I can surmise, is based on the circumstances and the ongoing strife between the gangs and police officers in El Salvador. I think she also explained that there's really no one else that would be doing something like this to her. September 2015, three gang members were arrested at their home. They had been shooting into the air. Petitioners believe their intent was to intimidate Ms. Hernandez. Again, this is a similar issue. We don't really know what their actual intent was, but this is what they inferred from the circumstances. Petitioners then heard rumors that gang members wanted to kill them and Mr. Moran. March 2016, petitioners encountered gang members outside their home. They heard these gang members chamber around. And same question. These are the men who were in the bushes. And it's the same issue. They weren't able to see them. I think they were obscured by a tree or a bush. Again, the petitioners explained that they don't have problems with anyone else. These are the only people that could be doing it. And I think that's based, in large part, based on the war going on between the police and the gangs in El Salvador. They ran inside. No shots were fired. Thankfully, no one was injured. Additionally, petitioners know and recognize Mr. Hernandez and Mr. Moran as police officers. I think it's important to keep in mind that El Salvador is a relatively small country. And there, they drive their police uniforms outside after washing them. They wore their uniforms while at work. People in the community knew their faces. Photos were taken of them at accidents or incidents that they responded to. Is this a national police force? Yes. And she also explained that police act differently than ordinary civilians. And this is hard to articulate. And I think she explained that police officers are honest. That's how they behave. That's how they act in public. And while it's difficult to articulate, I do understand where she's coming from. And I think she's right. Law enforcement professionals act with a high degree of professionalism and integrity, both on the job and off the job. And I think this is something you can discern in an individual when you approach them. All of this, considered in the larger context of gangs targeting police officers in El Salvador, demonstrates a nexus that is persecution on account of a protected ground. Here's Social Group. These incidents that occurred in El Salvador rise to the level of past persecution. Now, I understand typically threats are not sufficient. But this court has stated that an example of persecution that does not involve actual physical contact is a credible threat to inflict grave physical harm. As in pointing a gun at a person's head and pulling the trigger, but unbeknownst to the victim, the gun is not loaded. The incidents here, I think, get us to this level. In particular, while we need to consider these cumulatively, the incident where the gun was cocked gets us close. I know the trigger wasn't pulled here. I know we don't know where the gun was pointed. But I don't think we need to draw a line in the sand at the trigger being pulled and pointed at somebody's head. This is bad enough. And I know it could have been worse. But this court has also stated that it's not a reasoned basis to deny a claim of persecution because it could have been worse. Even if the petitioners cannot demonstrate past persecution, they can and did demonstrate a fear of future persecution. Petitioners are afraid of returning to El Salvador because of the threats they received and the incidents suffered by other officers. This fear is both subjectively reasonable and objectively reasonable. They experienced multiple threats. They heard rumors that gang members were going to kill them. Colleagues and other officers were killed. Gangs are throughout El Salvador, and they're ambushing police officers as a tactic to kill them and to intimidate the community. Ms. Hernandez will be recognized as a police officer. Again, this is a small country. She'll be recognized by her appearance. Photos have been taken. She'll be recognized by reputation, and as she explained, reputation as a police officer isn't something that just disappears overnight. Is there any evidence that photos were taken of her by gang members? Not in the record. Just her testimony, Your Honor. Petitioners will also encounter persecution anywhere in El Salvador. Again, they'll be recognized in the community. There are gangs throughout the country, and abandoning their home and trying to hide somewhere else is not a reasonable option in this circumstance. The economic situation in El Salvador is not great. It's quite poor, and abandoning their home, purchasing a new one, is not an economic reality for them. Petitioners are unable or unwilling to return to or avail themselves of the protection of El Salvador. As Mr. Moran explained, the government might be trying to stop the gangs, but it's unable to protect petitioners. The rate of violence is too high. They're unable to control this wave of violence, and he compared the gangs in El Salvador as more akin to terrorist organizations than your typical street gangs. If there are no further questions, I will reserve the rest of my time. Certainly, Counsel. Ms. Freer. May it please the Court. Allison Freer for the Attorney General. In this case, the agency reasonably ruled that Ms. Hernandez-Diaz had failed to show past persecution on account of a protected ground and a well-founded fear of persecutors who the Salvadoran government was unable or unwilling to control. First, with regards to past persecution, the agency reasonably found that the three vague incidents Ms. Hernandez-Diaz experienced were not sufficient to rise to the extreme level of past persecution. This Court has been clear that it is a rare circumstance in which threats alone can rise to the level of past persecution, and there is nothing about these threats that would rise to that level. Ms. Hernandez-Diaz didn't hear any of the threats directly. She didn't read any of them directly. The closest thing that came to hearing a threat was a neighbor's relayed a rumor going around that a gang member had threatened to kill Ms. Hernandez-Diaz and her family, but she didn't hear that threat directly, and Mr. Moran Espana used the word rumor to describe the threat that made its way to him. So other than those neighborhood rumors, she experienced someone kicking the wall of her home and then the person went away. She assumes that the person was trying to get into her house, but it doesn't seem that they tried very hard if all they tried to do was kick the wall for a while and then leave. The third incident in which she heard a gun being clocked in bushes near her home is certainly concerning, but as Petitioner just conceded, we don't know where the gun was pointed, we don't know who had it, we're not sure that the incident was even aimed at Ms. Hernandez-Diaz and her family. And so while the incidents were undoubtedly frightening, they do not rise to the extreme level of past persecution. Moreover, with respect to nexus for the past persecution, petitioners do not clearly challenge the IJ's determination in this regard. Right before this court, they recite facts and mention the IJ's decision, but they don't ever raise a clear argument about why the record compels a contrary conclusion, and so they have waived that argument here, even if they had not done so, and assuming that the social groups are cognizable. Ms. Hernandez-Diaz and her husband both credibly testified that the unknown individuals who were threatening them believed that they had reported gang activity to the police given the location of their house in the neighborhood, and that that is why they were targeting them for harm. Ms. Hernandez-Diaz and Mr. Moran Espana's home is apparently at the entrance to their neighborhood, and so they were aware of people coming and going from the neighborhood, and based on the location of their house, the gang believed that they were informing the police about their activities. Not because they were also police officers, but because of where their house was located. And the location of their house is obviously not a protected ground, and the IJ was entitled to rely on their credible testimony about why these things were happening. Finally, with respect to well-founded fear, the immigration judge ruled that Ms. Hernandez-Diaz had not shown that the Salvadoran police would be unable or unwilling to protect her. Petitioners did not raise that issue before the board on their appeal, and so they have failed to exhaust it, a statutory prohibition to this court's jurisdiction. Even if they had properly raised it, police responded to two of the three threatening incidents, even though Ms. Hernandez-Diaz had only called the police for one of them. They also responded to the second incident of the shot in the air, even though Ms. Hernandez-Diaz didn't call to report it. And she did not report the third incident of the man in the bushes. So every time she requested assistance, the police came, and one time when she didn't even request assistance, the police came. Ms. Hernandez-Diaz also reported that she, as a police officer, responded to gang incidents. So we know that at least the national police force in that local area was actively responding to gang activity and doing the best they could. No police force in the world is perfect, but the police were responding to the gangs. There's also evidence in the record referenced by the IJ referring to aggressive policing tactics and charges filed against corrupt officers, officers accused of wrongdoing. And so we know that the situation in El Salvador is far from perfect, but the Salvadoran government is taking active, concrete steps to combat gang activity. Finally, before this court, petitioners have affirmatively waived their political opinion claim and their CAT claim, so this court need not discuss it. And if there are no further questions, the petition for review should be denied. Thank you. Thank you, counsel. Anything further, Mr. Bozanski? First, as to nexus, these threats need to be considered cumulatively and in their context. The larger context here is that the gangs are targeting police officers in El Salvador, and that needs to be considered when thinking of past persecution, what it's on account of, and future persecution, what it would be on account of in the future. Additionally, there's been no waiver of nexus. My opening brief argues that the persecution was on account of a protected ground. And while the Salvadoran government may be trying their hardest to fight these gangs, they're not succeeding. Police officers continue to be killed. Others continue to be killed by these gangs. They need help, but they're not successful right now in protecting their own citizens and their own officers. Thank you very much, counsel. The case is taken under advisement.